## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THOMAS JONES, | Civil Action No. |
| Plaintiff, | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| 1LIFE HEALTHCARE, INC., AMIR DAN RUBIN, PAUL R. AUVIL, MARK S. BLUMENKRANZ, BRUCE W. DUNLEVIE, KALEN F. HOLMES, DAVID P. KENNEDY, FREDA LEWIS-HALL, ROBERT R. SCHMIDT, and SCOTT C. TAYLOR, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Thomas Jones ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by 1Life Healthcare, Inc. ("1Life" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning 1Life and the Defendants.

## SUMMARY OF THE ACTION

1.      This is an action brought by Plaintiff against 1Life and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the Company's proposed acquisition of Iora Health, Inc. ("Iora") (the "Proposed Transaction").

2.      On June 6, 2021, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with Iora.  Pursuant to the terms of the Merger Agreement the Iora shareholders are expected to own approximately 26.75% of the combined company.

3.      On July 14, 2021, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading registration statement with the SEC on Form S-4/A (the "Registration Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against 1Life and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to 1Life shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6.     This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8.     Plaintiff is, and has been at all times relevant hereto, the owner of 1Life shares.

9.     Defendant 1Life is incorporated under the laws of Delaware and has its principal executive offices located at One Embarcadero Center, Suite 1900, San Francisco, California, 94111.  The Company's common stock trades on the NASDAQ under the symbol "ONEM."

10.     Defendant Amir Dan Rubin ("Rubin") is and has been the Chairman of the Board, Chief Executive Officer ("CEO") and President of 1Life at all times during the relevant time period.

11.     Defendant Paul R. Auvil ("Auvil") is and has been a 1Life director at all times during the relevant time period.

12.     Defendant Mark S. Blumenkranz ("Blumenkranz") is and has been a 1Life director at all times during the relevant time period.

13.     Defendant Bruce W. Dunlevie ("Dunlevie") is and has been a 1Life director at all times during the relevant time period.

14.     Defendant Kalen F. Holmes ("Holmes") is and has been a 1Life director at all times during the relevant time period.

15.     Defendant David P. Kennedy ("Kennedy") is and has been a 1Life director at all times during the relevant time period.

16.     Defendant Freda Lewis-Hall ("Lewis-Hall") is and has been a 1Life director at all times during the relevant time period.

17.     Defendant Robert R. Schmidt ("Schmidt") is and has been a 1Life director at all times during the relevant time period.

18.     Defendant Scott C. Taylor ("Taylor") is and has been a 1Life director at all times during the relevant time period.

19.     Defendants Rubin, Auvil, Blumenkranz, Dunlevie, Holmes, Kennedy, Lewis-Hall, Schmidt, and Taylor are collectively referred to herein as the "Individual Defendants."

20.     The Individual Defendants, along with Defendant 1Life, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

21.     1Life is a membership-based and technology-powered primary care platform with seamless digital health and inviting in-office care, convenient to where people work, shop, live, and click. Our vision is to delight millions of members with better health and better care while

reducing costs. Our mission is to transform health care for all through our human-centered, technology-powered model. Headquartered in San Francisco, 1Life is the administrative and managerial services company for the affiliated One Medical physician-owned professional corporations that deliver medical services in-office and virtually. 1Life and the One Medical entities do business under the "One Medical" brand.

### The Company Announces the Proposed Transaction

22.     On June 7, 2021, the Company jointly issued a press release announcing the Proposed Transaction.  The press release stated in part:

SAN FRANCISCO, June 07, 2021 (GLOBE NEWSWIRE) -- 1Life Healthcare, Inc. (One Medical) (Nasdaq: ONEM), a leading human-centered and technology-powered primary care organization, today announced it has entered into a definitive agreement to acquire Iora Health, a human-centric, value-based primary care group with built-for-purpose technology focused on serving Medicare populations, in an all-stock transaction valued at approximately $2.1 billion.

"We are delighted to announce plans to combine with Iora Health, a technology-powered primary care leader delivering outstanding member-based, value-based care for adults 65+ enrolled in Medicare Advantage and other at-risk reimbursement models. Together we will expand our addressable market to serve more members in more geographies with digital and in-person care across every stage of life, with further capabilities to deliver care within full-risk models. Together with Iora Health, we can deliver better health, better care, and lower costs for children, adults, and seniors," said **Amir Dan Rubin**, Chair & CEO of One Medical.

"Chris McKown and I founded Iora Health over 10 years ago to build an innovative primary care model that transforms lives and improves outcomes through relationship-based care, and we are excited to take this next exciting step with One Medical," said **Rushika Fernandopulle**, M.D., MPP, Co-Founder and Chief Executive Officer of Iora Health. "Together, with our aligned cultures, shared mission, and complementary models, we can drive even greater impact for our patients, our teams, and our investors, and most importantly, our shared vision of transforming healthcare."

One Medical and Iora Health are aligned in their missions, models, and cultures to transform healthcare for key stakeholders -- Consumers, Employers and Payers, Providers, and Health Networks. Together, the two companies can further

accelerate and build upon their impacts for these stakeholders, while simultaneously expanding their models in existing markets, entering new markets, serving new populations, expanding full-risk models, and leveraging their purpose-built technologies for increased growth and scale.

Strategic and financial benefits of the transaction include:

- Creates a premier national member-based, technology-powered primary care platform to deliver better health, better care, and lower costs across Commercial and Medicare populations;

- Positions One Medical with Iora Health to advance the health of members across every stage of life;

- Extends One Medical's platform to deliver multi-modal care with 24/7 national digital health and in-person care across a combined 28 markets and beyond;

- Expands potential market opportunity to $870 billion across Commercial and Medicare segments, including the new Medicare Direct Contracting program;

- Enhances One Medical's risk-taking capabilities and extends One Medical into full-risk Medicare reimbursement models;

- Amplifies the power of purpose-built technologies to deliver premier member experiences, population health, provider support, and value-based care across every stage of life;

- Accelerates the expansion of two high-growth organizations, with complementary cultures and models serving as a premier place to practice modernized healthcare; and,

- Offers an opportunity to create significant value, with an expected $350+ million in annual revenue synergies by 2025, ~$30 million in annual net cost synergies by 2025, and with ~$30 million in cumulative capex savings through 2025.

"One Medical has proven its ability to drive profitable membership growth, engage with members, improve health outcomes and lower costs. I am excited at the prospect of creating even more differentiation by adding Iora Health's Medicare-focused capabilities, expanding our reach to 28 markets, and offering our service experience to the parents and grandparents of our 598 thousand members," said **Bjorn Thaler**, Chief Financial Officer, One Medical.

**Leadership and Governance**

A designee of Iora Health will join the One Medical Board and Rushika Fernandopulle will become One Medical's Chief Innovation Officer.

**Transaction Details**

Under the terms of the agreement, Iora Health shareholders will receive 56.1 million shares of One Medical common stock. Based on the closing share price of One Medical's common stock of $35.59 on June 4th, 2021, the total transaction is valued at approximately $2.1 billion. Upon completion of the transaction, Iora Health shareholders are expected to own approximately 26.75% of the combined company.

The transaction is expected to close in late Q3 or Q4 of 2021 and is subject to customary closing conditions, including approval by One Medical and Iora Health stockholders and receipt of regulatory approval.

**Advisors**

Morgan Stanley & Co. LLC served as exclusive financial advisor to One Medical and Cooley LLP served as legal advisor.

Credit Suisse served as exclusive financial advisor to Iora Health and Skadden, Arps, Slate, Meagher & Flom LLP served as legal advisor.

**FALSE AND MISLEADING STATEMENTS**
**AND/OR MATERIAL OMISSIONS IN THE REGISTRATION STATEMENT**

23.     On July 14, 2021, the Company authorized the filing of the Registration Statement with the SEC.  The Registration Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

24.     Defendants were obligated to carefully review the Registration Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding the Financial Projections**

25.     The Registration Statement contains projections prepared by the Company's and Iora's management concerning the Proposed Transaction, but fails to provide material information concerning such.

26.     The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1]  Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2]  One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

27.     In order to make management's projections included in the Registration Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

28.     Specifically, with respect to the *1Life Management* projection, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

GAAP measures, including: (i) Care Margin; (ii) Adjusted EBITDA; and (iii) Unlevered Free Cash Flow.

29.     With respect to the *Iora Seller Case* projection, prepared by Iora and adjusted by 1Life management the companies must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) Care Margin; (ii) Adjusted EBITDA; and (iii) Unlevered Free Cash Flow.

30.     With respect to the *Iora Base Case* projections, the Registration Statement must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) Care Margin; (ii) Adjusted EBITDA; (iii) Unlevered Free Cash Flow.

31.     With respect to the *Synergies Case* projections, the Registration Statement must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) Adjusted EBITDA.

32.     Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.   Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

**Material False and Misleading Statements or Material
<u>Misrepresentations or Omissions Regarding Morgan Stanley's Financial Opinion</u>**

33.     The Registration Statement contains the financial analyses and opinion of Morgan Stanley & Co. LLC ("Morgan Stanley") concerning the Proposed Transaction, but fails to provide material information concerning such.

34.     With respect to Morgan Stanley's *Discounted Future Value Analysis* for Iora, the Registration Statement fails to disclose: (i) The specific inputs and assumptions underlying Morgan Stanley's use of the multiples range; (ii) the specific inputs and assumptions underlying the utilized cost of equity rate of 8.6%; and (iii) Ioar's mid-point cost of equity derived.

35.     With respect to Morgan Stanley's *Discounted Cash Flow Analysis* for Iora, the Registration Statement also fails to disclose: (i) the current value of the unlevered forecasted free cash flows of Iora calculated; (ii) the terminal range for Iora calculated; (iii) the inputs and assumptions underlying Morgan Stanley's use of the perpetuity growth rate range of 2.5% to 3.5%; (iv) the inputs and assumptions underlying Morgan Stanley's use of the discount rate range of 7.8% to 9.3%; (v) Iora's estimated weighted average cost of capital; (vi) the current value of the cash from Iora's future capital raises; and (vii) the inputs and assumptions underlying Morgan Stanley's use of the perpetuity growth rate of 0% as applied to the synergies.

36.     With respect to Morgan Stanley's *Selected Publicly Traded Companies Analysis* for 1Life, the Registration Statement fails to disclose the inputs and assumptions underlying the utilized multiple reference ranges.

37.      With respect to Morgan Stanley's *Discounted Future Value Analysis* for 1Life, the Registration Statement fails to disclose: (i) the inputs and assumptions underlying Morgan Stanley's use of the 2023E revenue multiple range of 8.5x to 11.5x; and (ii) the inputs and assumptions underlying Morgan Stanley's use of the equity rate of 8.9%.

38.     With respect to Morgan Stanley's *Discounted Cash Flow Analysis* for 1Life, the Registration Statement fails to disclose: (i) the current value of the unlevered forecasted free cash flows of 1Life calculated; (ii) 1Life's calculated terminal range; (iii) the inputs and assumptions underlying Morgan Stanley's use of the perpetuity growth rate range of 2.5% to 3.5%; (iv) the

inputs and assumptions underlying Morgan Stanley's use of the discount range of 8.0% to 9.4%; (v) 1Life's estimated weighted average cost of capital; and (vi) the utilized present value of tax savings from the NOLs.

39.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Background of the Transaction

40.     The Registration Statements fails to provide material information regarding the background of the Proposed Transaction.

41.     Specifically, the Registration Statement fails to disclose: (i) sufficient information regarding the existence of and/or number and nature of all confidentiality agreements entered into between the Company and any interested third party during the sales process, if their terms differed from one another, and if they contained "don't-ask, don't-waive" or standstill provisions, and if so, the specific conditions, if any, under which such provisions would fall away or prevent parties from submitting a bid; (ii) sufficient information regarding communications about post-transaction employment and directorship during the negotiation of the Proposed Transaction.

42.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide

shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(a)
of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

43.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

45.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

46.     Defendants have issued the Registration Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

47.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

48.     The Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

49.     The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

50.     The Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement

upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

51.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

52.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act)

53.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

54.     The Individual Defendants acted as controlling persons of 1Life within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of 1Life, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

55.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Registration Statement and other statements alleged by Plaintiff to be misleading

prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

56.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

57.     In addition, as set forth in the Registration Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

58.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

59.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

60.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     Directing the Individual Defendants to disseminate an Amendment to the Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.     Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 13, 2021

Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
1190 Broadway,
Hewlett, New York 11557
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*